UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:08-cv-433-RJC

| | |
|---|---|
| THONG XUAN MAI, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>DAVID MITCHELL, Supt., Mountainview )<br>Correctional Institution, )<br>)<br>Respondent. )<br>) | ORDER |

**THIS MATTER** is before the Court upon Thong Xuan Mai's ("Petitioner") amended Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus (Doc. No. 1); Respondent's Motion for Summary Judgment (Doc. No. 4); and Petitioner's Motion for Summary Judgment (Doc. No. 11).

I. **HISTORY**

   A.   **Factual and Procedural Background**

The following factual summary is taken, in part, from the North Carolina Court of Appeals's unpublished opinion in State v. Mai, 188 N.C. App. 167 (2008).

On July 31, 2006, Petitioner was charged with three counts of trafficking in methylenedioxymethamphetamine ("Ecstacy") by possession, transportation, and sale, and with one count of conspiring to traffic in drugs. Mai, 188 N.C. App. at *1. Such offenses were reportedly committed by Petitioner and a woman named Kieu Oahn Luong ("Dee") on or about April 1, 2005. Id.

Petitioner's trial was scheduled for the Superior Court of Mecklenburg County's November 2006 term. Id. at *1. On November 6, 2006, defense counsel filed a combined

"Motion to Continue and Motion for Discovery" seeking to delay the trial and to obtain an order directing the state to provide him with its information concerning Dee and the other Ecstasy transactions with which she was reportedly involved during April 2005. (Doc. No. 5-3 at 15-17). On November 7, 2006, defense counsel issued a trial subpoena directing Dee to appear on the following day and testify for the defense; however, Dee was not served with that subpoena until November 9, 2006. (Id. at 20-21). When Petitioner's case was called for trial on November 9, 2006, the Court asked whether there were any matters to be handled before sending for the jury, but defense counsel made no mention of Dee or the Motion to Continue. Mai, 188 N.C. App. at *1. The following morning, when the Court asked the attorneys if they were ready for the jury, defense counsel said that he was. Id.

The state presented evidence that in April 2005, Charlotte-Mecklenburg Police Officer Dan Kellough was working undercover, investigating persons who were trafficking in Ecstasy. Id. at *1. During his investigation, Officer Kellough made arrangements to meet with Dee in order to purchase 150 Ecstasy pills. Id. On April 1, 2005, Dee and Petitioner drove onto a parking lot where Officer Kellough was waiting to complete the transaction. Id. Dee directed the Officer into the backseat of her car and then told Petitioner to hand the pills to him. Id. Petitioner retrieved a small, clear plastic bag of gray round pills that appeared to be Ecstasy from his pants pocket and handed it to the Officer. Id. Petitioner also told the Officer that "all the pills were there and that [the Officer] would like them." Id. Dee told the Officer to count his money and then hand it to Petitioner. Id. Officer Kellough complied before exiting the car. Id. Shortly after Dee and Petitioner drove away, they were stopped by a uniformed officer for displaying an expired registration sticker. Id. During the stop, the officer obtained identification from Dee and Petitioner. Id.

Petitioner testified that on the day in question, he and Dee were going to a restaurant when she said that she had to drop off something. Id. at *2. Dee then drove to a parking lot and stopped the car. Id. After a man got into her car, Dee told the man to count his money and she gave the man a bag of pills. Id. Dee then asked Petitioner to recount the money, and he did so because Dee was busy on the telephone. Id. However, Petitioner denied knowing what Dee was doing, and he told the jury that he had neither received nor expected to receive any payment from Dee for the sale of the drugs. Id.

Once the parties presented their cases, the Court held an unrecorded bench conference during which defense counsel discussed his efforts to contact a "Ms. Brooks and an unnamed witness." Id. at *2. Although he had not filed the subpoena with the Court, defense counsel advised that the unnamed "witness was under subpoena . . . "; and that he had left messages for his witnesses but had been unable to reach them. Id. When the Court indicated a willingness to give defense counsel more time to contact his witnesses, counsel asked for an early lunch recess. Id. The Court scheduled the lunch recess for 12:00 until 1:30, but warned defense counsel that if he failed to locate his witnesses, he would have to proceed without them. Id. Counsel responded that the scheduled recess was "fine," and that he understood the Court's admonition. Id.

After lunch, in response to the Court's inquiry, defense counsel confirmed that he was ready to proceed. Id. Defense counsel then entered an exhibit into evidence, rested his case and moved for a dismissal. Id. That motion was denied. Id.

After deliberating, the jury convicted Petitioner of trafficking in Ecstasy by possession and by sale. Mai, 188 N.C. App. at *2. The Court sentenced Petitioner to consecutive terms of 35 to 42 months' imprisonment for each of his convictions. Id.

3

### B. State Court Proceedings

Petitioner timely filed a direct appeal through newly appointed counsel, arguing that by calling his case for trial while his written Motion to Continue was pending, the trial court deprived him of his constitutional right to present a defense. Id. at *2. However, the state Court of Appeals concluded that although he was given ample opportunity to do so, Petitioner had failed to preserve that claim for appellate review by his failure to timely file his motion to continue, raise his request for a continuance in constitutional terms, and obtain a ruling from the trial court on said motion. Id. at *3. Furthermore, the Court of Appeals determined that there was no basis to suspend the requirements of the rules governing appellate review in order to conduct a sua sponte review of the claim. Id. at 3-4. Therefore, the court dismissed Petitioner's appeal. Id. at 4. Petitioner did not seek any further direct review of his claim. (Doc. No. 1 at 2).

Petitioner instead filed a Motion for Appropriate Relief ("MAR") on March 26, 2008, arguing that his convictions and sentences were obtained in violation of his Sixth and Fourteenth Amendment rights, based upon counsel's failure to, inter alia, timely file his Motion to Continue, and inform him of the state's plea offer. (Doc. No. 5-6 at 8-12). On May 5, 2008, Petitioner's MAR was summarily denied on the grounds that "identical issues could have been raised on appeal or were resolved against him by the North Carolina Court of Appeals. . . ." (Doc. No. 5-7). Petitioner filed a certiorari petition in the state Court of Appeals on May 20, 2008, but it was denied on June 24, 2008.

### C. Federal Habeas Allegations

On September 19, 2008, Petitioner filed the instant § 2254 Petition (Doc. No. 1). Here, Petitioner reasserts his appellate claim that by calling his case for trial when his written Motion to Continue was pending, the trial court violated his constitutional right to present a defense.

4

(Doc. No. 1 at 5). Petitioner also reasserts his MAR claim that his convictions and sentences[1] were obtained in violation of his Sixth and Fourteenth Amendment rights, due to counsel's failure to timely file his Motion to Continue, and to inform him of the state's plea offer. (Id. at 6).

## II. STANDARDS OF REVIEW

### A. Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, and answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord Sylvia Dev. Corp. v. Calvert Cnty., 48 F.3d 810, 818 (4th Cir. 1995).

---

[1] Petitioner was convicted and sentenced for two separate offenses, yet, his claim makes reference to a single "conviction" and "sentence." (Doc. No. 1 at 6). Notwithstanding Petitioner's references, the Court will construe his claim as challenging both of his convictions and sentences.

5

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

**B.     Section 2254**

In addition to the summary judgment standard set forth above, the Court must consider this Petition under the particular standards governing the review of habeas corpus petitions. First, 28 U.S.C. § 2254 requires a petitioner to exhaust the remedies available to him in the state courts before filing a writ of habeas corpus in the federal courts. 28 U.S.C. § 2254(b)(1)(A). Section 2254's exhaustion requirement demands that a petitioner give "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." Larry v. Branker, 552 F.3d 356, 366 (4th Cir. 2009) (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999)). This "one full opportunity" includes filing petitions for discretionary review when that review is part of the ordinary appellate procedure in the state. See Boerckel, 526 U.S. at 845. In North Carolina, a petitioner may satisfy § 2254's exhaustion requirement by directly appealing his conviction to the North Carolina Court of Appeals and then petitioning the North Carolina Supreme Court for discretionary review, or by filing a state post-conviction proceeding in the trial court division and then petitioning the North Carolina Court of Appeals for a writ of certiorari. See N.C. GEN. STAT. §§ 7A-31, 15A-1422.

Second, 28 U.S.C. § 2254(d) provides that:

> An application for a writ of habeas corpus on behalf of a person in

6

> custody pursuant to the judgment of a State Court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

28 U.S.C. § 2254(d); see also Tice v. Johnson, 647 F.3d 87, 103 (4th Cir. 2011).

A claim is considered "adjudicated on the merits" when it was "substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." Young v. Catoe, 205 F.3d 750, 755 (4th Cir. 2000) (quoting Thomas v. Davis, 192 F.3d 445, 455 (4th Cir. 1999)). A state court adjudication is "contrary to" clearly established federal law only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "It is not enough for us to say that, confronted with the same facts, we would have applied the law differently; we can accord [the petitioner] a remedy only by concluding that the state court's application of the law in his case was objectively unreasonable." See Tice, 647 F.3d at 103 (citing Williams v. Ozmint, 494 F.3d 478, 483-84 (4th Cir. 2007)). "[W]e will not discern an unreasonable application of federal law unless 'the state court's decision lies well outside the boundaries of permissible differences of opinion.'" Id. at 108 (quoting Goodman v. Bertrand, 467 F.3d 1022, 1028 (7th Cir. 2006)).

In contrast, "[a] federal habeas court will not review a claim rejected by a state court if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Walker v. Martin, 131 S. Ct. 1120, 1127 (2011)

7

(internal quotation and citation omitted). "The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits." Id. (citation omitted). A procedural default also occurs "when a habeas petitioner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." Hyman v. Keller, 2011 WL 3489092, at *9 (4th Cir. 2011) (quoting Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998)).

However, a petitioner may overcome a finding of procedural default by showing cause and prejudice arising from the asserted constitutional error. McCarver v. Lee, 221 F.3d 583, 591-92 (4th Cir. 2000). To show "cause," a petitioner may make "a showing that the factual or legal basis for the claim was not reasonably available to counsel." Id. at 591 (quoting McCleskey v. Zant, 499 U.S. 467, 494 (1991)). To establish "prejudice," a petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Id. at 592 (quoting United States v. Frady, 456 U.S. 152, 170 (1982)).

A habeas petitioner may also overcome his procedural default by demonstrating that the court's failure to consider the claim will result in a fundamental miscarriage of justice. Hedrick v. True, 443 F.3d 342, 359 (4th Cir. 2006) (citing Coleman v. Thompson, 501 U.S. 722, 750 (1991)). The "fundamental miscarriage of justice" exception applies only to a narrow class of cases involving extraordinary instances "where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." Dretke v. Haley, 541 U.S. 386, 392-94 (2004) (citing Murray v. Carrier, 477 U.S. 478, 494-96 (1986)).

Applying the foregoing framework to Petitioner's claims, for the reasons stated below,

the Court has determined that both claims are barred from its review.

**III. ANALYSIS**

First, Petitioner claims that the trial court violated his constitutional right to present a defense by calling his case to trial despite his outstanding Motion to Continue. Although Petitioner raised this claim in his direct appeal, and the state Court of Appeals dismissed it as waived, he did not complete his direct review of the claim by raising it before the state Supreme Court in a petition for discretionary review. Nor did Petitioner raise the claim in his MAR proceedings. (Id. at 3). Therefore, because Petitioner failed to invoke a full round of review for this first claim, it is unexhausted. See Boerckle, 526 U.S. at 845; 28 U.S.C. § 2254(b)(1).

Moreover, Petitioner cannot return to the state Supreme Court to exhaust his claim in a petition for discretionary review because the time in which to file such a petition has expired. See N.C. R. App. P. 15(a) and (b) (providing 15 days to file petition for discretionary review to Supreme Court following Court of Appeals's mandate); 32(b) (providing that mandates issue 20 days after written opinions unless otherwise ordered). Furthermore, if Petitioner were to return to the trial court to present the claim in a newly filed MAR, it would be procedurally barred under N.C. Gen. Stat. § 15A-1419(a)(1) (providing for summary denial of claim when, "[u]pon a previous [MAR], the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so."). As such, Petitioner has defaulted this claim. Therefore, the claim will be procedurally barred from this Court's review unless he can establish cause to excuse his default. Boerckle, 526 U.S. at 848; Breard, 134 F.3d at 619.

Petitioner has not asserted an explanation to excuse his default of this claim. However, to the extent Petitioner's claim that counsel failed to timely file the Motion to Continue can be construed as an argument for cause, such an argument is unavailing. Indeed, that argument

simply does not explain why Petitioner neglected to raise this claim in either a petition for discretionary review or in a MAR. Ultimately, Petitioner has procedurally defaulted this claim without excuse; therefore, the Court cannot consider the merits of it.[2]

Petitioner's other claim alleges that his convictions and sentences were obtained in violation of his constitutional rights due to counsel's failure to timely file his Motion to Continue and to inform him of the state's plea offer. (Doc. No. 1 at 6). The MAR court denied this claim, in part, because it could have been raised and resolved on direct appeal. (Doc. No. 5-7). Thereafter, the North Carolina Court of Appeals summarily denied Petitioner's certiorari petition to review the MAR court's decision. (Doc. No. 5-10). Thus, the MAR court's ruling [3] implicitly states an application of North Carolina's procedural rule that provides for the denial of appropriate relief when "[u]pon a previous appeal the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so." N.C. GEN. STAT. § 15A-1419(a)(3).

The Fourth Circuit has stated that section 15A-1419(a)(3) is generally an independent and adequate state procedural bar. See McCarver, 221 F.3d at 589. "A state rule is adequate if it is firmly established and regularly or consistently applied by the state court, and independent if it does not depend on a federal constitutional ruling." Brown v. Lee, 319 F.3d 162, 169 (4th Cir.

---

[2] Petitioner does not contend that the Court of Appeals's finding that his "argument was without merit" constitutes a decision on the merits, thus, the Court need not address that question. Even so, the law is clear that "[a] decision which bases dismissal both on the merits and on an independent and adequate state law ground forecloses federal habeas review." Skipper v. French, 130 F.3d 603, 609 (4th Cir. 1997). Therefore, such a contention would not have aided Petitioner's cause.

[3] Because the denial of that certiorari petition was summary in nature, this Court will look to the MAR opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) (presumption exists that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting that same claim rest upon same ground"); accord Skipper, 130 F.3d at 609.

2003) (internal quotation marks, citations, and alteration omitted).

Petitioner may avoid the procedural bar created by the state court's application of § 15A-1419(a)(3) if he can establish that North Carolina courts do not regularly and consistently apply this rule to claims like the one at issue here. See Reid v. True, 349 F.3d 788, 805 (4th Cir. 2003). But Petitioner does not argue that. Instead, he contends that the MAR court's ruling is erroneous because both the U.S. and state supreme courts have indicated that the "accepted practice" is to raise claims of ineffective assistance of counsel in post-conviction proceedings rather than on direct appeal. (Id. at 7-8). However, this contention is without merit.

Massaro v. United States, 538 U.S. 500 (2003), the Supreme Court case upon which Petitioner relies, "involved the question of the proper forum for federal habeas claims" of ineffective assistance of counsel. Sanchez-Llamas v. Oregon, 548 U.S. 331, 359 (2006) (emphasis in original). Indeed, the Massaro Court held that such federal claims "may be raised for the first time in a proceeding under 28 U.S.C. § 2255." Id. at 359. Notably, Massaro did not announce a rule requiring state courts to permit defendants to wait until they file post conviction proceedings to raise their claims of ineffective assistance of counsel. In fact, in Perkins v. Lee, 72 F. App'x 4 (4th Cir. 2003) (unpublished), the court observed that because the Massaro holding was not based upon constitutional mandates, a state court, like North Carolina, would be free to employ an approach that differs from the one taken in Massaro. Id. at 9 n.1.

Moreover, at the time the Fourth Circuit decided Perkins, it already had recognized that "North Carolina courts have held that ineffective assistance claims that are not brought on direct review can be procedurally defaulted under section 15A-1419(a)(3)." McCarver, 221 F.3d at 589. McCarver involved the MAR court's procedural bar, under § 1419(a)(3), of a defaulted appellate claim that trial counsel was ineffective for failing to prevent the presentation of certain

11

damaging evidence to the jury. Id. at 588. Similar to the instant case, McCarver argued that the procedural bar rule is inapplicable "in the special case of ineffective assistance of counsel claims . . . ." Id. at 589. However, the district court rejected that argument, declining to allow McCarver "to treat ineffective assistance claims as categorically different from other kinds of claims that can be barred under section 15A-1419(a)(3)." Id. In sum, the court affirmed the district court's determination that: (1) McCarver's claim of ineffective assistance was subject to an application of § 1419(a)(3) because he could have raised it on direct appeal; (2) McCarver failed to show that the bar was not consistently and regularly applied to that type of defaulted claim; and (3) McCarver failed to show cause to excuse his default. Id. at 592.

In Basden v. Lee, 290 F.3d 602 (4th Cir. 2002), the court affirmed a district court's bar of several defaulted claims under § 1419(a)(3), including one that counsel had failed to move to continue the sentencing phase of the trial. Id. at 617. The court determined that the factual predicates for those claims were available to appellate counsel, and that Petitioner had failed to show any basis for overcoming his default of the claims on appeal. Id. at 617-18.

In addition, this Court has found several other cases in which the district court relied upon the state's application of § 1419(a)(3) to bar various readily apparent claims of ineffective assistance of counsel that were defaulted on direct appeal. See, e.g., Hilliard v. Beck, 2008 WL 2695815, *3-4 (E.D.N.C. July 9, 2008) (unpublished) (finding § 1419(a)(3) independent and adequate to bar defaulted claim that counsel failed to conduct sufficient pre-trial investigation); Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008) (affirming district court's bar of claim under § 1419(a)(3) that counsel erroneously conceded petitioner's guilt); Cole v. Branker, 2007 WL 2782327 *8 (E.D.N.C. Sept. 20, 2007) (unpublished) (finding § 1419(a)(3) independent and adequate to bar defaulted claim that counsel failed to seek dismissal of involuntary manslaughter

charge); Perkins, 72 F. App'x at *9-11 (affirming district court's bar of defaulted claim under § 1419(a)(3) that counsel failed to present expert mental health evidence); Williams v. French, 146 F.3d 203 (4th Cir. 1998) (finding §1419(a)(3) independent and adequate to bar defaulted claim that counsel had conflict of interest).

Here, the record reflects that the information from which Petitioner could have extrapolated an appellate claim that counsel was ineffective for failing to timely file the Motion to Continue was readily apparent at the conclusion of his trial. Furthermore, Petitioner's ineffective assistance claim, based on counsel's failure to inform him of the state's plea offer, is unavailing. In an attempt to excuse his default, Petitioner argues that he "had no knowledge as to what a plea agreement was." (Doc. No. 1 at 7). But Petitioner does not explain when and how he discovered the factual predicate for this claim; nor does he explain why appellate counsel could not have discovered the claim in time to raise it on appeal. Moreover, the obvious obstacles that Petitioner would have faced in attempting to raise these allegations through trial counsel were removed because he was represented by a different attorney on appeal. See Massaro, 538 U.S. at 502-03 (observing that an attorney who handles the trial and appeal "is unlikely to raise an ineffective-assistance claim against himself.").

Ultimately, Petitioner has failed to show that § 1419(a)(3) is not consistently and regularly applied to readily apparent allegations of ineffective assistance of counsel like his; therefore, his claim was defaulted pursuant to an independent and adequate state rule of procedure. Furthermore, because Petitioner has failed to establish an excuse for his default, his claim of ineffective assistance of counsel is barred from this Court's review.[4]

---

[4] Even if Petitioner were entitled to review of his allegation that counsel was ineffective for failing to inform him of the state's plea offer, such allegation would be subject to summary dismissal for his failure to allege a

13

## IV. CONCLUSION

Both of Petitioner's claims are barred from the Court's review due to Petitioner's unexcused procedural default of them in state court.

**IT IS, THEREFORE, ORDERED** that:

1. Respondent's Motion for Summary Judgment (Doc. No. 4) is **GRANTED**;

2. Petitioner's for Summary Judgment (Doc. No. 11) is **DENIED;**

3. Petitioner's Petition for a Writ of Habeas is **DISMISSED**; and

4. It is further ordered that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: September 9, 2011

Robert J. Conrad, Jr.
Chief United States District Judge

---

single fact to establish that claim. Nickerson, 971 F.2d at 1136.